# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. 16-CR-80-CJW-MAR |
| vs. | |
| BRANDON BROWN, | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | |

## I.  INTRODUCTION

This matter is before the Court on defendant's motion for compassionate release. (Docs. 50 & 51). Defense counsel filed a brief under *Anders v. California*, 386 U.S. 738 (1967). (Doc. 50-1). The government was not required to respond to the motion. For the following reasons, the Court **denies** defendant's motion.

## II.  RELEVANT BACKGROUND

On July 29, 2016, defendant robbed the F&M Bank in Monticello, Iowa. (Doc. 31, at 4). Defendant entered the bank wearing a dark hoodie, a mask with a skull on it, gloves, and dark pants. (*Id.*). Defendant pointed what appeared to be a firearm but was actually a BB gun at a teller and demanded money. (*Id.*, at 4–5). Defendant left the bank with $4,474. (*Id.*). After taking significant efforts to evade detection, defendant was eventually arrested. (*Id.*). After repeatedly lying to officers, he eventually confessed to the robbery. (*Id.*, at 4–6).

On October 5, 2016, a grand jury issued an Indictment charging defendant with one count of bank robbery and one count of armed bank robbery in violation of Title 18,

United States Code, Section 2113. (Doc. 2). On November 23, 2016, defendant pled guilty to the armed bank robbery charge. (Doc. 21).

On February 7, 2017, the United States Probation Office filed defendant's final presentence investigation report. (Doc. 31). Defendant was 45 years old. (*Id.*, at 2). Defendant's father was involved in criminal activity and both his parents suffered from drug addiction and mental health issues. (*Id.*, at 19). His siblings had similar issues. (*Id.*, at 20). He reported that he was subject to extreme physical, mental, and sexual abuse by his family and others. (*Id.*, at 19, 22). As a result, defendant reported that he essentially raised himself on the streets. (*Id.*). It appears he did not graduate high school. (*Id.*). As an adult, he had only held employment for a handful of months. (*Id.*, at 22). Defendant had two sons, both of whom were incarcerated and with whom defendant had no contact. (*Id.*, at 20). Defendant had uncontrolled hypertension, pre-diabetes, and potentially some type of secondary chronic kidney disease. (*Id.*, at 21). He falsely reported that he had a tumor. (*Id.*). Defendant had depression and suffered from sleep issues. (*Id.*). He reported that he had attempted suicide twice, but no records confirmed his accounts. (*Id.*). Defendant did not report any significant substance abuse history. (*Id.*). He had an extensive criminal history characterized primarily by numerous theft convictions, but also including one instance of unlawfully possessing a firearm, one theft of a vehicle in which he struck an elderly man, and an incident of domestic abuse. (*Id.*, at 8–13). He had 16 adult convictions, eight of which he committed while on probation or parole, and the instant offense he also committed on probation and parole. (*Id.*).

On February 14, 2017, the Court sentenced defendant. (Doc. 36). Defendant was in criminal history category VI with a total offense level of 22, yielding an advisory guideline range of 84 to 105 months' imprisonment followed by two to five years on supervised release. (Doc. 31, at 24). The Court sentenced defendant to 105 months' imprisonment followed by five years on supervised release. (Doc. 37).

On May 21, 2020, defendant filed a pro se motion for a sentence reduction. (Doc. 43). On May 26, 2020, the Court denied his motion. (Doc. 44). On November 19, 2020, defendant submitted a pro se motion for compassionate release. (Doc. 46). On December 22, 2020, the Court appointed counsel to defendant. (Doc. 47). On January 4, 2021, defendant supplemented his motion. (Doc. 49). On January 5, 2021, defendant filed his motion for compassionate release now before the Court, which he later supplemented. (Docs. 50 & 51). Defendant is currently incarcerated at Terre Haute USP with a projected release date of January 13, 2024.[1]

### III. COMPASSIONATE RELEASE STANDARDS

A court's ability to modify a sentence after it has been imposed is limited. Title 18, United States Code, Section 3582(c)(1)(A) allows a court to modify a sentence through "compassionate release." A defendant may directly petition the court for compassionate release "after the defendant has fully exhausted all administrative rights to appeal a failure of the [Bureau of Prisons ("BOP")] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Although some courts disagree, this Court holds that defendants are not required to administratively appeal a warden's denial and may satisfy Section 3582(c)(1)(A) by waiting 30 days from the date the warden receives their request before filing a motion for compassionate release in the courts. *United States v. Burnside*, 467 F. Supp. 3d 659, 667 (N.D. Iowa 2020) (compiling cases).

The court may only reduce the defendant's sentence, however, after considering the factors set forth in Title 18, United States Code, Section 3553(a) to the extent they are applicable, and finding that:

---

[1] *Find an Inmate*, BOP, https://www.bop.gov/inmateloc/.

> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [Bureau of Prisons] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A). Defendants bear the burden of establishing eligibility for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

United States Sentencing Guidelines ("USSG") Section 1B1.13 defines "extraordinary and compelling reasons" as used in Section 3582(c)(1)(A)(i). Section 1B1.13 provides that such reasons exist when the defendant is (1) suffering from a terminal illness; (2) suffering from a serious physical or medical condition, a functional or cognitive impairment, or physical or mental deterioration due to aging which substantially diminishes the defendant's ability to care for themselves within the facility and from which the defendant is not expected to recover; (3) at least 65 years old, experiencing serious deterioration due to age, and has served at least 10 years or 75 percent of their sentence; (4) experiencing a change in family circumstances, namely the death or incapacitation of the caregiver of the defendant's minor child or the incapacitation of the defendant's spouse who now requires the defendant's care; or (5) is experiencing some other extraordinary and compelling reason as determined by the BOP. Although some courts disagree, this Court holds that Section 1B1.13 is not binding because it predates the First Step Act of 2018's amendments to Section 3582(c)(1)(A) which enabled defendants to bring motions for compassionate release on their own behalf. *United States v. Crandall*, No. 89-CR-21-CJW-MAR, 2020 WL 7080309, at *5 (N.D. Iowa Dec. 3, 2020). The Court recognizes, however, that Section 1B1.13 should still be

4

Case 1:16-cr-00080-CJW-MAR   Document 52   Filed 01/25/21   Page 4 of 10

considered a helpful guidepost in determining whether extraordinary and compelling reasons exist to release a defendant. *Id.*

## IV. DISCUSSION

### A. Exhaustion of Administrative Remedies

Defendant submitted a request for release to his warden on June 11, 2020. (Doc. 50-2, at 97). On June 19, 2020, the warden denied defendant's request. (*Id.*, at 98). In light of these facts, the Court finds defendant has fulfilled the exhaustion requirement of 3582(c)(1)(A) because 30 days have lapsed from the date the warden of his facility received his request. *See Burnside*, 467 F. Supp. 3d at 667.

### B. Extraordinary and Compelling Reason

Defendant argues an extraordinary and compelling reason for release is present because his health conditions place him at a substantially higher risk of severe outcomes from COVID-19. (Doc. 50-1, at 8–11). Defendant cites his hypertension (which is only sub-optimally controlled and has related neuropathy), related "kidney problems," pre-diabetes, and vision problems. (*Id.*, at 8–9). Defendant also contracted COVID-19 in November 2020 and was reported to have an asymptomatic case, but he asserts he still suffers from chest pains, side pain, respiratory pain, and difficulty exercising. (*Id.*). Currently, 43 inmates and three staff persons are positive for COVID-19 at Terre Haute USP, another 688 inmates and 15 staff have recovered, and two inmates have died.[2]

The COVID-19 pandemic can constitute an extraordinary and compelling reason for compassionate release if the defendant is at a substantially greater risk of severe outcomes from COVID-19 due to age or underlying health conditions. *See Burnside*, 467 F. Supp. 3d at 668 (compiling cases). The Centers for Disease Control and Prevention ("CDC") recognizes that hypertension is a potential, but not a known, risk

---

[2] *COVID-19*, BOP, https://www.bop.gov/coronavirus/.

factor relevant to COVID-19.[3]  The CDC recognizes that having a chronic kidney disease also increases a person's risk to COVID-19.  *Id*.  Although type II diabetes is recognized by the CDC as a risk factor and type I diabetes and gestational diabetes are potential risk factors, the CDC does not list prediabetes as being relevant to COVID-19.  *Id*.  The CDC does not list vision problems as being relevant to COVID-19.  A person's risk to COVID-19 also increases with age.[4]  Eight out of ten deaths related to COVID-19 in the United States have been in adults older than 65.  *Id*.  Persons over age 85 are at "[t]he greatest risk for severe illness from COVID-19."  *Id*.

The Court noted in its order on initial review that defendant appeared to be exaggerating his health issues because his medical records did not bear out his claims.  (Doc. 47, at 2).  His full medical records further support that defendant is malingering.  In December 2020, defendant demanded to see a doctor due to, he asserted, his many ongoing, unaddressed medical issues.  (Doc. 50-2, at 1).  Defendant's doctor noted that defendant did not appear to be in any distress.  (*Id.*).  Similar consultations appear throughout the record wherein defendant asserts medical issues and no such issues are identified.  (*Id.*, at 7, 14, 17, 23, 25).  It appears defendant often requested appointments based on these unsupported medical conditions and believed his medical conditions would help him obtain release.  (*Id.*, at 72) ("can you give me copy of my medical records please im going home soon thank you").  In this order, however, the Court will set this issue aside and accept defendant's health conditions to the extent they are supported.

Defendant is 49 years' old.  (Doc. 31, at 2).  Thus, although the Court notes his age, he is not in or near being in a high-risk age group.

---

[3] *People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (Dec. 29, 2020).

[4] *Older Adults*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (Dec. 13, 2020).

Although having a chronic kidney disease is a recognized risk factor, defendant has not been diagnosed as having such a disease. It appears he only has a small lesion on his right kidney that is not discussed at length or with concern in his records. (Doc. 50-2, at 71). The Court finds that, at best, this is only a potential risk factor and will consider it as such.

Because hypertension is only noted as a potential risk factor by the CDC, the Court has generally only considered it if the defendant's hypertension is consistent and severe. *See United States v. Clutts*, No. 18-CR-70-CJW-MAR, 2020 WL 6531915, at *6 (N.D. Iowa Nov. 5, 2020). Here, defendant has long been diagnosed with hypertension and his records show that he fluctuates in and out of stages of hypertension. (Doc. 50-2, at 31). He is prescribed medication for this condition although he apparently refuses to take it at times. (*Id.*, at 9, 14–15). On balance, the Court affords this condition significant weight as a risk factor in its analysis, even in light of defendant's noncompliance with his treatment.

The CDC does not list prediabetes or vision problems as being relevant to COVID-19. (Doc. 50-2, at 53) (containing defendant's prediabetes diagnosis). Although prediabetes may later develop into type II diabetes, the Court declines to consider health conditions defendant does not yet have and may never have. Thus, the Court affords these conditions little to no weight in its analysis.

On balance, the Court finds that defendant's health conditions do not place him at a substantially higher risk of severe outcomes from COVID-19 and thus do not constitute an extraordinary and compelling reason for release. He has cited, at best, one significant potential risk factor (his hypertension) and one minor potential risk factor (his kidney issues). He is only a Care Level 1 inmate. (Doc. 50-2, at 94). Considering these conditions in combination with his age, defendant is at best at a marginally increased risk

7

Case 1:16-cr-00080-CJW-MAR   Document 52   Filed 01/25/21   Page 7 of 10

during the pandemic if he is at an increased risk at all. His health conditions are not so substantial that release is compelled here.

Even if defendant's health conditions did constitute an extraordinary and compelling reason for release, the Court would still deny release because defendant has already contracted and largely recovered from COVID-19. The Court has consistently denied motions for compassionate release in such cases. *See, e.g.*, *United States v. Seeman*, No. 18-CR-101-CJW-MAR, 2020 WL 4193272, at *5 (N.D. Iowa July 21, 2020). This is so because the CDC notes that "[c]ases of reinfection with COVID-19 have been reported, but remain rare."[5] In other words, defendant is at a low likelihood of reinfection and, given the antibodies he now possesses, is at a correspondingly low likelihood to experience severe symptoms even if he is reinfected. Moreover, defendant apparently had an asymptomatic case of COVID-19 or, at best, a mild case. (Doc. 50-2, at 45–48) (no symptoms noted and "in no apparent distress"). Regardless, even if he experienced a serious bout of COVID-19, his subsequent recovery and low likelihood of reinfection would preclude release. The Court has no basis to release a defendant due to their risk to COVID-19 when they have already contracted the virus, have or will in all likelihood soon recover from it, and have a low chance of reinfection. Even taking defendant's statement as true that he still experiences some lingering effects from COVID-19, these lasting effects appear to be normal, relatively minor, and within the capabilities of his facility's medical staff to address. In any event, his lasting effects are not themselves so serious or debilitating that they warrant release. In sum, defendant's prior infection with COVID-19 weighs against his motion here.

---

[5] *Reinfection with COVID-19*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html (Oct. 27, 2020).

In light of the analysis above, the Court finds that defendant has not presented an extraordinary and compelling reason for release. The Court will, however, analyze the Section 3553(a) factors as if defendant had presented such a reason.

### C. *Section 3553(a) Factors and Danger to Community*

Guideline Section 1B1.13(2) provides compassionate release is appropriate only when "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)[.]" Section 3582(c)(1)(A) requires a court to consider the factors set forth in Section 3553(a) before granting compassionate release. Section 3553(a) requires the Court to consider: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, and provide rehabilitative opportunities and care to the defendant; (3) the kinds of sentences available; (4) the sentencing range as set by the USSG; (5) any pertinent policy by the United States Sentencing Commission; (6) the need to avoid unwarranted sentencing disparities among similarly situated defendants; and (7) the need for restitution to any victims.

Defendant's underlying offense is aggravating. Defendant caused several bank tellers to fear for their lives just so he could swindle a few thousand dollars. He repeatedly lied to law enforcement officers about this offense and only confessed when confronted with his glaring contradictions. His criminal history is replete with theft offenses, some violence, and repeated violations of probation and parole. Probation, parole, and even long terms of incarceration have not deterred him from engaging in criminal conduct. (Doc. 31, at 8–12). Even accepting defendant's self-reported horrific childhood, his underlying offense and criminal history warranted the sentence he received.

The Court notes that defendant has taken some classes and worked while incarcerated and has proposed a suitable release plan. (Docs. 50-2, at 94; 51). He has not had any disciplinary reports within the last six months, if at all. (Doc. 50-2, at 94, 99). Defendant reports that his time in prison has rehabilitated him. (*Id.*, at 99–110).

Even so, defendant has served only a little more than half his sentence and has approximately three years left to serve. Releasing him now would fail to offer adequate deterrence, promote respect for the law, provide just punishment, protect the public, or reflect the seriousness of his offense. This is particularly true given the aggravating nature of his offense and his recidivist criminal history. Thus, even if defendant had presented an extraordinary and compelling reason for release, the Court would not release him in order to fulfill the goals of Section 3553(a).

## V.　　CONCLUSION

For these reasons, the Court **denies** defendant's motion for compassionate release. (Doc. 50). The Court also **denies** his pro se motion for the same reasons. (Doc. 46). Defendant must serve his term of incarceration as previously directed. (Doc. 37).

**IT IS SO ORDERED** this 25th day of January, 2021.

_____
C.J. Williams
United States District Judge
Northern District of Iowa